QUESTION PRESENTED AND CONCLUSION
Has Colorado met the federal intravenous drug use ("IVDU") set-aside requirement for a block grant?
Yes.
ANALYSIS
Colorado receives approximately $14,000,000 each year for ADMS programs, provided it meets federal requirements. Of that amount, 35 percent must by law be devoted to substance abuse programs. Section 1916(c)(7)(B)(i) of the Public Health Service Act [42 U.S.C. § 300x-1a(i) (1991)], requires that 50 percent of that 35 percent must be dedicated "to carry out the programs of treatment for intravenous drug abuse described in section 1915(c) [42 U.S.C. § 300x-3(c)]." Section 1915(c) allows the funds to be used, among other purposes, "to develop, implement, and operate programs of treatment for intravenous drug abuse . . . ." There are no federal regulations or published agency guidelines which interpret these provisions.[1]
Nor does the statute specify that 50% of the funds must be used to treat only individuals whose intravenous drug usage has been documented.[2]
However, the emphasis of the statute is on programs — program development, implementation, and operation — and not on individuals. In addition, the regulations concerning enforcement of all block grants administered by the Department of Health and Human Services ("HHS"), provide that HHS:
 recognizes that under the block grant programs the States are primarily responsible for interpreting the governing statutory provisions . . . . In resolving any issue raised by a complaint or a Federal audit the Department will defer to a State's interpretation of its assurances and of the provisions of the block grant statutes unless the interpretation is clearly erroneous.
45 C.F.R. § 96.50(e)(1992).
Based upon statistical data, the Department of Health ("Department"), apparently makes an assumption that individuals who abuse heroin, other opiates, amphetamines and cocaine, use, have used, or without treatment will use, drugs by injection. In its 1991 annual report to the Public Health Service, the Department characterized that assumption as the "potential" for intravenous drug use among such individuals. Therefore, the treatment of such individuals always includes treatment for use of drugs by injection, whether or not each such individual actually has reported or shows evidence of intravenous drug usage. Consistent with the statute's purpose of preventing the spread of human immunodeficiency virus, Colorado has increased its emphasis on the hazards of intravenous drug use.
Colorado's construction of the statute is reasonable and not clearly erroneous, and should be given effect. Inasmuch as expenditures for the Department's IVDU program exceed 50% of the amount devoted to substance abuse, the federal requirement has been met.
SUMMARY
Colorado provides more than 50% of the ADMS block grant funds for treatment of drug abuse in an IVDU program; accordingly, it has met the federal intravenous drug use "set-aside" requirement.
 GALE A. NORTON Attorney General
 Joyce K. Herr Senior Assistant Attorney General
FEDERAL GRANTS UNITED STATES STATUTORY CONSTRUCTION
42 U.S.C. § 300x-1a(i)42 U.S.C. § 300x-3(c)
DEPARTMENT OF HEALTH
Because Colorado treats all abusers of certain drugs as potential users by injection, it meets the intravenous drug use "set-aside" requirement of the ADMS block grant.
[1] The "Alcohol, Drug Abuse, and Mental Health Services Block Grant State Waiver Guidelines; 50 Percent Set-Aside for Intravenous Drug Abuse — FY 1989," published at54 Fed. Reg. 23,697 (1989), do not define "programs for the treatment of intravenous drug abuse."
[2] As there was no Senate or House Report submitted with the Anti-Drug Abuse Act of 1988, the legislative history also does not provide insight as to congressional intent.